■ ROSEMARY McKNIGHT, Respondent, v NEW YORK CITY TRANSIT AUTHORITY et al., Appellants. [55 NYS3d 91]—

In an action to recover damages for personal injuries, the defendants appeal, as limited by their brief, from so much of a judgment of the Supreme Court, Kings County (Velasquez, J.), entered January 5, 2014, as, upon a jury verdict on the issue of damages awarding the plaintiff, inter alia, the sums of $190,000 for past medical expenses, $80,000 for past lost earnings, and $400,000 for future lost earnings, and upon an order of the same court dated July 30, 2014, made after a collateral source hearing, denying that branch of their motion pursuant to CPLR 4545 which was for a collateral source setoff, is in favor of the plaintiff and against them in the total sum of $2,606,528.99.

Ordered that the judgment is modified, on the law, (1) by deleting the provision thereof awarding the plaintiff damages in the principal sum of $80,000 for past lost earnings, and substituting therefor a provision awarding damages in the

principal sum of $46,790 for past lost earnings, and (2) by deleting the provision thereof awarding damages in the principal sum of $400,000 for future lost earnings, and substituting therefor a provision awarding damages in the principal sum of $282,740 for future lost earnings; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements, and the order dated July 30, 2014, is modified accordingly.

The plaintiff, a nursing assistant, was injured in a work-related accident in 2002. As a result of that accident, she began to receive Workers' Compensation and Social Security disability benefits. She attempted to re-enter the workforce, undergoing training to become a medical assistant. However, while traveling to one of the final tests for her medical assistant certification on a bus owned by the defendant New York City Transit Authority (hereinafter NYCTA) and operated by the defendant Jimmie Cotton, the plaintiff was further injured when the bus collided with another vehicle.

The plaintiff then commenced this action to recover damages for the injuries she sustained in connection with the bus accident. After a trial on the issue of damages, the jury awarded the plaintiff damages totaling $2,270,000, including, among other awards, the sums of $190,000 for past medical expenses, $80,000 for past lost earnings, and $400,000 for future lost earnings over 11 years for the job she likely would have secured as a medical assistant.

The defendants then moved pursuant to CPLR 4545, inter alia, for a collateral source setoff to the awards for past medical expenses and past and future lost earnings. The Supreme Court held a collateral source hearing, and, after the hearing, denied the branch of their motion which was for a collateral source setoff. The court then entered judgment against the defendants. The defendants appeal from those portions of the judgment which awarded the plaintiff the sums of $190,000 for past medical expenses, $80,000 for past lost earnings, and $400,000 for future lost earnings.

In "[a]ctions for personal injury . . . where the plaintiff seeks to recover for the cost of medical care, dental care, custodial care or rehabilitation services, loss of earnings or other economic loss, evidence shall be admissible for consideration by the court to establish that any such past or future cost or expense was or will, with reasonable certainty, be replaced or indemnified, in whole or in part, from any collateral source, except for life insurance and those payments as to which there is a statutory right of reimbursement" (CPLR 4545 [a]). The

legislative intent of CPLR 4545 (a) is to "eliminat[e] plaintiffs' duplicative recoveries" (*Oden v Chemung County Indus. Dev. Agency*, 87 NY2d 81, 88 [1995]; *see Fisher v Qualico Contr. Corp.*, 98 NY2d 534, 538 [2002]). "The moving defendant bears the burden of establishing an entitlement to a collateral source reduction of an award for past or future economic loss" (*Kihl v Pfeffer*, 47 AD3d 154, 163 [2007]).

"Reasonable certainty is understood as involving a quantum of proof that is greater than a preponderance of evidence but less than proof beyond a reasonable doubt. Each of the four judicial departments has interpreted 'reasonable certainty' as akin to the clear and convincing evidence standard, that the result urged by the defendant be 'highly probable' " (*id.* at 163-164, quoting *Quezada v O'Reilly-Green*, 24 AD3d 744, 746 [2005]). In order to determine whether a party has established with "reasonable certainty" a payment by a collateral source, the defendants first "must establish with reasonable certainty that the plaintiff has received, or will receive, payments from a collateral source" (*Kihl v Pfeffer*, 47 AD3d at 164), and, second, "that collateral source payments which have been or will be received by the plaintiff must be shown to specifically correspond to particular items of economic loss awarded by the trier of fact" (*id.*). "Each case involving potential future collateral source reductions to awards for economic loss must be judged on its own unique facts and merits" (*id.* at 167).

Here, contrary to the plaintiff's contention, the Workers' Compensation and Social Security benefits that she was receiving as a result of the 2002 accident constitute a collateral source that could potentially offset her award from this action to recover damages in connection with the 2010 accident. Both the plaintiff and her vocational rehabilitation specialist testified that the plaintiff's benefits would have ceased if she had begun to work again. Therefore, although the plaintiff was not receiving Workers' Compensation and Social Security benefits as a result of the 2010 accident, under the unique circumstances of this case, those benefits constituted collateral sources that could potentially offset her award (*see Terranova v New York City Tr. Auth.*, 49 AD3d 10, 19 [2007]; *Kihl v Pfeffer*, 47 AD3d at 163-167).

Further, the defendants established with reasonable certainty that since the commencement of the action, the plaintiff had been receiving Workers' Compensation benefits based upon the 2002 accident in the sum of $205 per week, and would continue to receive those benefits indefinitely. The plaintiff testified to this amount at the collateral source hearing, and

also identified a document denominated as a "stipulation" from the State of New York Workers' Compensation Board dated November 4, 2009, which the plaintiff had signed and which stated that she was receiving $205 per week in benefits. Therefore, the plaintiff's award for past lost wages must be reduced by the sum of $33,210, which represents the weekly $205 Workers' Compensation payments that she received between June 2, 2010, the date of the accident, and July 18, 2013, the date of the verdict, and her future award must be reduced by $117,260, which represents her weekly Workers' Compensation benefits over the 11 years of the award (*see* CPLR 4545 [a]; *Terranova v New York City Tr. Auth.*, 49 AD3d at 19).

However, the defendants, who did not submit any documentation from the Social Security Administration and who elicited the plaintiff's inconsistent testimony as to the amounts she was receiving per month in Social Security disability benefits, failed to establish with reasonable certainty that the plaintiff had been receiving, or would continue to receive, Social Security disability payments (*see* CPLR 4545 [a]; *Kihl v Pfeffer*, 47 AD3d at 163-167).

Additionally, the defendants failed to establish with reasonable certainty that they paid for some of the plaintiff's past medical bills through no-fault insurance. At the collateral source hearing, the plaintiff testified that she had taken out a loan of approximately $60,000 to pay for some of her treatment, and that some of her treating physicians had taken liens against her. Further, the defendants offered only copies of the plaintiff's medical bills without any testimony from an expert or no-fault insurance adjuster to explain them (*see Lahren v Boehmer Transp. Corp.*, 49 AD3d 1186, 1188 [2008]). This evidence was insufficient to establish with reasonable certainty which portions, if any, of the plaintiff's bills the defendants had paid (*see* CPLR 4545 [a]; *Kihl v Pfeffer*, 47 AD3d at 163-167).

The defendants' contentions that the plaintiff's claim for past and future lost earnings must be dismissed on the grounds of collateral or judicial estoppel, and that the plaintiff's medical bills should have been reduced pursuant to Insurance Law § 5108, are improperly raised for the first time on appeal (*see Fresh Pond Rd. Assoc. v Estate of Schacht*, 120 AD2d 561, 561 [1986]). Additionally, the defendants' contention that they failed to produce any of the plaintiff's Social Security records at the collateral source hearing because the plaintiff failed to provide an updated authorization after the Social Security Administration rejected their first authorization is without merit. Rivera, J.P., Chambers, Duffy and Barros, JJ., concur.