■ AMBER ROBERTS, as Parent and Guardian of MADISON ROBERTS, an Infant, Appellant, v MARLENE EL-HAJAL, Defendant, and E.J. NOBLE HOSPITAL, Respondent. [804 NYS2d 819]—

Rose, J. Appeal from a judgment of the Supreme Court (Demarest, J.), entered January 3, 2005 in St. Lawrence County, which, inter alia, granted a motion by defendant E.J. Noble Hospital for summary judgment dismissing the complaint against it.

Plaintiff commenced this medical malpractice action alleging that defendant Marlene El-Hajal negligently failed to diagnose a rare seizure disorder in plaintiff's infant son. Following joinder of issue and discovery, defendant E.J. Noble Hospital (hereinafter defendant) moved for summary judgment dismissing the complaint against it. Plaintiff cross-moved for partial summary judgment declaring defendant to be vicariously liable. Finding that defendant could not be held liable for El-Hajal's actions as a matter of law because she was an independent contractor and defendant had no actual or apparent authority to supervise and control her medical practice, Supreme Court granted its motion. Plaintiff appeals.

The determination whether an individual is an employee or an independent contractor turns primarily upon the question of whether the principal exercised control over the results produced by the alleged employee or the means used to achieve those results (see Matter of 12 Cornelia St. [Ross], 56 NY2d 895, 897 [1982]; Dolan v Jaeger, 285 AD2d 844, 846 [2001]; Crannell v Kim, 255 AD2d 773, 774 [1998]; Greene v Osterhoudt, 251 AD2d 786, 787 [1998]; Mduba v Benedictine Hosp., 52 AD2d

450, 452-453 [1976]). Indeed, the key premise for the general rule against imposing vicarious liability is the principal's lack of power to regulate the manner in which the work is performed (*see Kleeman v Rheingold*, 81 NY2d 270, 274 [1993]; *Nagengast v Samaritan Hosp.*, 211 AD2d 878, 878-879 [1995]; *Berger v Dykstra*, 203 AD2d 754, 754 [1994], *lv dismissed* 84 NY2d 965 [1994]).

The record shows that defendant assisted El-Hajal, a nonimmigrant alien, in various ways in order to recruit her to practice medicine in an area with a shortage of health professionals and help her establish a successful private practice. This assistance included visa documents signed by defendant's administrator in July 1996, and a contract in which defendant agreed to provide El-Hajal with a furnished office, staff and an earnings guarantee beginning on August 1, 1996. While the visa documents indicate that El-Hajal would be employed by defendant for some period of time beginning August 1, 1996, plaintiff concedes that they were issued in order to obtain a visa waiver and do not pertain to the relationship between defendant and El-Hajal at the time that plaintiff sought treatment for her son, namely between October 1998 and January 1999.

As for the contract between defendant and El-Hajal, its earnings guarantee—the strongest indicator of a possible employer-employee relationship—extended for only one year and, thus, was not shown to be in effect when plaintiff sought treatment for her son. In addition, the contract states that El-Hajal is an independent contractor and grants defendant no authority or obligation to control her practice, require her to treat its patients or pay her for providing treatment to patients. El-Hajal was not restricted from working for, or having privileges at, another hospital. In addition, other than health insurance, defendant provided El-Hajal no typical employee benefits, such as malpractice insurance, workers' compensation and unemployment insurance. Thus, after the earnings guarantee expired in July 1997 and El-Hajal was no longer financially accountable to defendant, the contract had nothing to do with the manner in which she conducted her medical practice. Inasmuch as plaintiff offers no other evidence that defendant employed El-Hajal or had any authority or obligation to exercise control of her practice of medicine during the relevant time period, Supreme Court correctly found plaintiff's submissions insufficient to raise a material question of fact.

Finally, plaintiff contends that regardless of El-Hajal's status, her claim against defendant should have been preserved to the extent that it is based upon the alleged failure of Joy Markwick,

a nurse who was employed by defendant and worked with El-Hajal, to record and report telephone calls which plaintiff had made to El-Hajal's office. This contention has no merit. Even if such a claim could be considered in the absence of an amended pleading (*see Vine v Manville Sales Corp.*, 175 AD2d 380, 381 [1991]; *Tri-State Aluminum Prods. v Wecher*, 128 AD2d 697, 699 [1987]), there is no evidence supporting it. Plaintiff testified in her examination before trial that her telephone calls occurred primarily in November 1998 and, in response, Markwick either told her to bring her son to the office or passed the calls on to El-Hajal. Also, while Markwick did not recall receiving telephone calls from plaintiff, she was only asked during her deposition about calls made in October 1998. She was not asked about calls received in November 1998, which was the month when plaintiff said the frequent calls occurred. Thus, the record does not support the claim that plaintiff's concerns were withheld from El-Hajal or that Markwick failed to report plaintiff's concerns to El-Hajal. Nor did plaintiff provide any evidence that Markwick's alleged conduct departed from the applicable standard of care and was causally related to the injuries sustained by plaintiff's son (*see Hoffman v Pelletier*, 6 AD3d 889, 892 [2004]; *Chase v Cayuga Med. Ctr. at Ithaca*, 2 AD3d 990, 990-991 [2003]).

Cardona, P.J., Mercure, Crew III and Carpinello, JJ., concur. Ordered that the judgment is affirmed, with costs.